**Sisco v. Luppert**

*Amy Ershler,* for plaintiffs.
*Robin Read,* for defendants.

BROWN, *J.,* December 21, 1993—Plaintiffs Mark Sisco and Van Thompson reside at a rooming house located at 1117 Vine Avenue in Williamsport, Pennsylvania. On or about August 23, 1993, the defendant Williamsport Municipal Water Authority terminated water service to 1117 Vine Avenue because the landlord, defendant John Bricker Jr., failed to pay the water bill for a time frame in excess of three months. The plaintiffs asked the authority to restore water service to the dwelling pursuant to the Utility Service Tenant's Rights Act, 68 P.S. §399.1, et seq. The Water Authority denied this request contending that USTRA did not apply to 1117 Vine Avenue.

The plaintiffs filed a complaint and request for injunctive relief on September 3, 1993. After an ex parte hearing, the court on September 3, 1993 entered an order directing the Water Authority to return water service to the property in question and a hearing on the preliminary injunction was scheduled for September 8, 1993. After conference with the court on September 8, 1993, the parties agreed that the Water Authority would continue to supply service to the property in question and that plaintiffs would pay the Water Authority a weekly amount for the amount owed by the landlord for service and that plaintiffs would credit these amounts to their apartment rent obligations. The court on September 8, 1993, also took testimony on the issue of whether the rooming house here constituted a residential building and whether plaintiffs constituted tenants as those terms are defined by USTRA. Briefing was or-

dered on the involved issues and this opinion is written in response to these issues.

Both plaintiffs Mark Sisco and Van Thompson have oral leases with the landlord owner of 1117 Vine Avenue, John Bricker Jr. Defendant Barry Miller Sr. is the manager for this property and he collects rent from the tenants and residents. Both plaintiffs have oral leases with the landlord. Plaintiff Mark Sisco has lived at 1117 Vine Avenue since April 1992. Plaintiff Van Thompson has lived there since November 1991. Mark Sisco has a key to his room in the rooming house and his room has a private bath. He has been in this particular room for eight months and before this lived in another room at 1117 Vine Avenue. He switched rooms to attain the private bath. Mr. Sisco pays his rent to Barry Miller and pays a rental of $240 per month. He presently pays biweekly. Mr. Sisco has a television, a stereo and all his personal belongings in his room. Mr. Sisco supplies his own mattress for the bed which is placed upon a box spring and frame owned by the landlord. Mr. Sisco supplies some of the furniture for the room. Mr. Sisco views his room as a permanent abode.

The rooming house at 1117 Vine Avenue has six separate rooms. Mr. Sisco's room is the only one with a private bath. The five other rooms share two bathrooms. There is a communal kitchen in the rooming house shared by all the tenants. There are mailboxes and Mr. Miller, the landlord's agent, sometimes sorts the mail and at other times the tenants get their own mail.

Plaintiff Van Thompson has resided at 1117 Vine Avenue for over two years at the time of this opinion. He has a key to his room. He pays rent of $200 per month plus some arrears. He pays on a weekly basis.

Mr. Thompson's driver's license lists 1117 Vine Avenue as his address. He has a television, dresser, couch and refrigerator in his room. A bed and dresser is furnished by the landlord. Mr. Thompson uses a communal bathroom. He does not often use the communal kitchen. His lease includes electricity and heat. Mr. Thompson has his own entrance to his room, a private entrance in the rear, and he has his own mailbox. Mr. Thompson testified that he does not want to move and he does not consider this room as a temporary residence, but rather as his permanent home.

Beside the plaintiff-tenants, other inhabitants of 1117 Vine Avenue testified at the September 8, 1993 hearing. The length of the tenancies of the other residents varies from one year to six weeks. The building at 1117 Vine Avenue also has written house rules introduced into evidence as plaintiffs' exhibit 2.[1] Clearly all residents of 1117 Vine Avenue see their apartment as their home and would be homeless if unable to stay there.

Sometime around Thanksgiving 1992, the Bureau of Codes of the City of Williamsport, condemned 1117 Vine Avenue as a result of landlord Bricker's failure to repair problems at the dwelling. The tenants, including Sisco and Thompson, worked together to avoid condemnation of the property. Their efforts were successful, and the property was not shut down.

On or about August 23, 1993 the Water Authority terminated water service to 1117 Vine Avenue because the landlord failed to pay the water bill for several

---

1. The title to the rules shows that the individual rooms are referred to as "apartments." The rules refer to the occupants as "tenants." (See numbers 7, 9, 10.) Payment to the landlord is called "rent." (See number 13.)

months. The tenants through their attorney, asked the Water Authority to comply with USTRA and restore water service to the dwelling. The Water Authority contended USTRA did not apply and refused. Plaintiffs' counsel's request to the Water Authority to comply with USTRA is contained in a letter dated August 31, 1993, and is attached to plaintiffs' complaint as exhibit B.

On or about August 27, 1993, counsel for the plaintiffs telephoned defendants Bricker and Miller to discuss turning on the water. After these telephone conversations, defendants Bricker and Miller gave eviction notices to the tenants. There is an issue of whether the landlord's action is a retaliatory eviction but such issue is not the subject of this opinion.

## DISCUSSION

The defendant Water Authority in their brief filed October 25, 1993 at p. 6 concedes that the Landlord-Tenant Act of 1951, 68 P.S. §250.101 et seq., applies to rooming houses by virtue of its broad definition of apartment to include "a room or suite of two or more rooms occupied or leased for occupation or intended or designed to be occupied as a domicile." 68 P.S. §250. 551(2). However, the Water Authority argues that USTRA is more narrowly defined and does not apply to a rooming house such as this. We disagree.

USTRA is an act which provides tenants the right to cure a landlord rate payer's default to a utility so that service is not terminated to a tenant. Under USTRA the utility is to give certain notices to a landlord ratepayer and affected tenants before utility service to a residential building can be terminated. The act requires a landlord who does not pay the bill within seven days of receipt of a discontinuance notice to provide the utility with the names and addresses of every affected tenant. 68

P.S. §399.4(a). Such notice then must explain to affected tenants how they can have continued service, 68 P.S. §399.6(3). Such notice would thus allow affected tenants a mechanism to have continued service by paying an amount equal to the bill or the landlord ratepayer for the 30 day period preceding the notice to the tenants. 68 P.S. §399.7.

The protections of USTRA are afforded to all residential buildings except nursing homes, hotels and motels. In USTRA, residential buildings is defined in the following way:

"A building containing one or more dwelling units occupied by one or more tenants, but excluding nursing homes, hotels and motels." 68 P.S. §399.2

While the Water Authority argues that a rooming house is similar to a hotel or motel there is an important distinction at least as applied to the plaintiffs in this case. These plaintiffs have resided at 1117 Vine Avenue for a significant period of time. This is their home. Their possessions are stored here and they have no other home to go to. It is clear, and we think the Water Authority as previously mentioned admits this, that plaintiffs reside in and occupy 1117 Vine Avenue as their domicile. See definition of apartment in the Landlord-Tenant Act, 68 P.S. §250.551(2). It is thus apparent that this situation is not akin to a hotel or motel which USTRA would not define as a residential building. Moreover, if the legislature intended rooming houses to be excluded from the definition of residential buildings they simply could have said so in the statute. Rooming houses are not so labeled as such an exception.

USTRA defines a tenant as follows:

"Any person or group of persons whose dwelling unit in a residential building or mobile home park is provided gas, electricity, steam or water, pursuant to

a rental arrangement for such dwelling unit, mobile home or plot of ground within a mobile home park, but who is not the note payer of the company which supplies such gas, electricity, steam or water." 68 P.S. §399.2.

Certainly all the apartments have electrical service. Plaintiff Sisco has direct water service to his room. Plaintiff Thompson shares a communal bathroom with other tenants. While the Water Authority could conceivably argue that plaintiff Thompson would not be covered by USTRA definition of tenant for he does not have individual water service, such would lead to an illogical result. This is so because such rationale would require a finding that Mr. Thompson fits within the USTRA definition of tenant in regard to the electrical company, but not as to the Water Authority. We would find such result to be incongruous and inconsistent with the kind of protection USTRA is meant to provide to individuals such as Mr. Thompson. The legislative history of USTRA, attached to plaintiffs' brief filed on October 22, 1993, as exhibit A, indicates a strong protective purpose to protect tenants by not holding them responsible for a landlord's lack of responsibility in failing to pay utility bills. See Pennsylvania Legislative Journal-House, December 6, 1977 at 3491. This purpose is here best served in applying USTRA to the plaintiff-tenants on the facts as developed in this case.

The final issue raised by the Water Authority concerns the term or concept of dwelling unit. Both the USTRA definitions of residential buildings (68 P.S. §399.2) and tenant (68 P.S. §399.2) contain the phrase "dwelling unit." See definitions as previously cited in this opinion. The Water Authority argues that the dwellings of plaintiffs are not dwelling units and hence USTRA should not be applied to them. It must first be stated that USTRA does not define the descriptive phrase dwelling

unit. The authority urges application of other statutes or ordinances which have a definition of the phrase dwelling unit such as 72 P.S. §§4711-201(2), 4711-301, and the Williamsport Planning and Zoning Code at section 1311.12. However, the act found at title 72 deals with taxation and fiscal affairs. This statute has nothing to do with landlord-tenant relationships. Likewise, the Williamsport Planning and Zoning Code does not deal with landlord-tenant relationships but is restricted to zoning. Further, it is logical that different cities, boroughs or towns in Pennsylvania may have differing definitions of such concepts as dwelling units. It does not make sense to use such ordinances in interpreting a concept used in USTRA.

We agree with plaintiffs' argument that USTRA and the landlord-tenant statute should be construed together. It is these acts, both in chapter 8 of title 68 of Purdon's entitled "Landlord and Tenant," which seek to fix the rights and obligations of the parties involved in this litigation:

"Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things. [They] ... shall be construed together, if possible, as one statute." 1 Pa.C.S. §1932.

Obviously, the Landlord-Tenant Act regulates the relationship between those who are considered to be in a landlord-tenant relationship. The defendant Water Authority does not contest the applicability of the Landlord-Tenant Act to plaintiffs. USTRA seeks to protect individuals who have not had a direct relationship with the utility before utility service is terminated. We thus feel the Landlord-Tenant Act would be the most applicable statute in interpreting USTRA.

In conclusion, based on the foregoing discussion the court finds that the Utility Service Tenant's Rights Act applies to plaintiffs Mark Sisco and Van Thompson and the defendant Williamsport Municipal Water Authority must comply with this act and allow plaintiffs the opportunity to be availed of this act.[2]

## ORDER

And now, December 21, 1993, for the reasons stated in the attached opinion, the preliminary injunction in favor of plaintiffs and against the defendant is granted.

The court administrator should schedule a final injunction hearing to consider the following issues: (consistent with the order of September 8, 1993)

(1) Plaintiffs' claim for damages as to the defendant Williamsport Water Authority.

(2) Plaintiffs' claim for attorney fees from the defendant Williamsport Water Authority.

(3) Whether the eviction process stated by defendants John Bricker Jr. and Barry Miller Sr. is a retaliatory eviction pursuant to 68 P.S. §399.11 and thus whether plaintiffs are entitled to damages from defendants John Bricker Jr. and Barry Miller Sr.

(4) Whether defendants John Bricker and Barry Miller violated the order of September 3, 1993 of the Honorable Judge Clinton W. Smith by turning the water in the apartments off.

---

2. The court in its order of September 8, 1993 indicated that if we found in favor of plaintiffs and against the Water Authority a final injunctive hearing would be scheduled concerning damages. We are somewhat skeptical about the claim for damages because water service was promptly restored by prior court order, but consistent with the order of September 8, 1993, the final injunctive hearing would consider any issues of damages and attorney fees.

The court administrator should send notice of the final injunctive hearing to all parties at the addresses listed in the order of September 8, 1993. Approximately two to three hours would be needed for the final hearing.[3]

---

3. The court will not issue a decree nisi at this time on the issue ruled upon between plaintiffs and the Water Authority in the opinion and order of this date. This is because the related issues of damages and attorney fees are still unresolved. At the completion of the final injunction hearing a decree nisi will be issued which would give any aggrieved party an opportunity to file exceptions within 10 days of the entry of the decree nisi.